BONNIE SUDDERTH, CHIEF JUSTICE
*819 In nine issues, Appellants James McGibney and ViaView, Inc. complain of the trial court's award of attorney's fees and contingent appellate attorney's fees, as well as monetary and nonmonetary sanctions, to Appellee Neal Rauhauser in conjunction with the granting of Appellee's motion to dismiss under chapter 27 of the civil practice and remedies code, also known as the Texas Citizens Participation Act (TCPA). Concluding, in light of the record before us, that the trial court abused its discretion by awarding an unreasonable amount of attorney's fees and monetary sanctions under the TCPA, by imposing nonmonetary sanctions when the TCPA does not provide for them, and by improperly conditioning the appellate attorney's fee award, we reverse and vacate these portions of the trial court's judgment, affirm the remainder of the trial court's judgment, and remand the case to the trial court for further proceedings.
I. General Background
In response to a defamation action that Appellants brought against him, Appellee filed a motion to dismiss under the TCPA. See Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001 -.011 (West 2015). After Appellee appealed the trial court's failure to rule on the motion within the time prescribed by section 27.005, we remanded the case for the trial court to dismiss Appellants' defamation claims and to conduct a hearing on the award of attorney's fees and sanctions. See Rauhauser v. McGibney (Rauhauser I ), 508 S.W.3d 377, 380, 390 (Tex. App.-Fort Worth 2014, no pet.), disapproved of on other grounds by Hersh v. Tatum , 526 S.W.3d 462, 467 & n.23 (Tex. 2017).
On remand, without holding a hearing, the trial court signed an order awarding $300,383.84 in attorney's fees and $1,000,000 in sanctions. In their emergency motion to stay the order, Appellants raised-among other complaints-the failure of the trial court to hold a hearing on the matter. The trial court granted the motion. After conducting a hearing, the trial court signed a new order setting aside the $1,000,000 sanction award and awarding Appellee $300,383.84 in attorney's fees and expenses, $75,000 in conditional attorney's fees on appeal, and $150,000 in sanctions. In addition, the trial court imposed nonmonetary sanctions, ordering:
1. The disclosure and transfer to Appellee, within five days of the date of the order, six domain names "registered and used by [Appellants]."[1]
2. The disclosure of "all domain names that [Appellants] or their agents have registered using any form of the name of attorney 'Jeffrey L. Dorrell' " within five days of the order.
3. The publishing-for 365 consecutive days-of a "written apology on the first page of all websites owned by [Appellants]" for making certain allegations against Appellee "and admitting that [Appellants] had no evidence to support such accusations when they made them."
4. The publishing-for 365 consecutive days-of a "written apology on the first page of all websites owned by [Appellants]" for making certain remarks about Appellee's attorney "and admitting that [Appellants] had no evidence to support such an accusation when they made it."
*820 II. Attorney's Fees
A. Complaint as to the Amount of Attorney's Fees Awarded
1. Attorney's Fees Incurred in Defending Against the Suit
In Appellants' first and second issues, they argue that the trial court erred by awarding attorney's fees that were not actually incurred or incurred in defending against this suit. Embedded in their argument is a complaint that the amount awarded was not reasonable. We agree that the amount of attorney's fees awarded was not reasonable.
When reviewing a trial court's award of attorney's fees under civil practice and remedies code section 27.009(a)(1), appellate courts should apply an abuse of discretion standard. Sullivan v. Abraham , 488 S.W.3d 294, 299 (Tex. 2016). A trial court does not abuse its discretion merely because the appellate court would have ruled differently in the same circumstance. E.I. du Pont de Nemours & Co. v. Robinson , 923 S.W.2d 549, 558 (Tex. 1995) ; see also Low v. Henry , 221 S.W.3d 609, 620 (Tex. 2007). Instead, the appropriate inquiry is whether the court acted without reference to any guiding rules or principles, that is, whether the court's act was arbitrary or unreasonable. Low , 221 S.W.3d at 614 ; Cire v. Cummings , 134 S.W.3d 835, 838-39 (Tex. 2004).
And while an abuse of discretion does not occur when the trial court bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision, Unifund CCR Partners v. Villa , 299 S.W.3d 92, 97 (Tex. 2009) ; Butnaru v. Ford Motor Co. , 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g), when a trial court rules without supporting evidence, it has abused its discretion. Ford Motor Co. v. Garcia , 363 S.W.3d 573, 578 (Tex. 2012).
With regard to awarding attorney's fees following the granting of a motion to dismiss under the TCPA, civil practice and remedies code section 27.009(a)(1) provides,
If the court orders dismissal of a legal action under this chapter, the court shall award to the moving party: (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require[.]
Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(1).
In applying section 27.009(a)(1), the supreme court has instructed us two-fold. Sullivan , 488 S.W.3d at 296. Specifically, the court has clarified the meaning of "reasonable attorney's fees" under the statute. Id. at 299. A reasonable attorney's fee, according to Sullivan , is " 'one that is not excessive or extreme, but rather moderate or fair.' " Id. (quoting Garcia v. Gomez , 319 S.W.3d 638, 642 (Tex. 2010) ). And the supreme court has directed us that the phrase, "as justice and equity may require" does not modify the term "attorney's fees." Id. at 298-99. This holding is of particular importance here when considering Appellants' argument that "[o]nly fees incurred in defending against the suit can be shifted to [Appellants]." A closer look at the underpinning for the Sullivan holding reveals the fallacy of this argument.
In Sullivan , the court observed that had the legislature intended for the phrase "incurred in defending the legal action as justice and equity may require" to apply to attorney's fees, the legislature could have inserted a comma after "other expenses." Id. at 298. But, as the court pointed out, the legislature did not. Id. at 298-99. Thus, in addressing the question of whether the principles of justice and equity are to be *821 applied by the trial court when considering attorney's fees, the supreme court said "no"; justice and equity are proper considerations in the context of awarding "other expenses," but not in the context of awarding attorney's fees.[2] Id.
The phrase that Appellants urge should apply to the assessment of attorney's fees-"incurred in defending the legal action"-is part of the very same phrase that the court in Sullivan held did not to apply to attorney's fees. See id. If the latter part of the phrase "incurred in defending the legal action as justice and equity may require" does not apply to attorney's fees, it cannot be said that the former part does. See id. Thus, following Sullivan , the phrase "incurred in defending the legal action" applies only to the award of other expenses, not attorney's fees. Per Sullivan , then, under section 27.009, "other expenses" outside of court costs and attorney's fees can be awarded only if "incurred in defending against the legal action as justice and equity may require," but the statute requires that attorney's fees awarded under the statute be "reasonable." Consequently, we overrule Appellants' first issue and this part of Appellants' second issue.
But our inquiry does not end here. We still must consider Appellants' argument that the attorney's fees awarded were excessive and unreasonable.
2. Reasonableness of Attorney's Fees Awarded
Here, the trial court awarded 100% of the amount that Appellee sought-$300,838.84. In the proper exercise of its discretion, a trial judge is obliged to do more than simply act as a rubber-stamp, accepting carte blanche the amount appearing on the bill. See id. at 299-300 (discussing that a trial court should conduct a "meaningful review" of fee applications). As explained above, to discharge its responsibility, the trial court must act within guiding rules and principles, see Low , 221 S.W.3d at 614 ; Cire , 134 S.W.3d at 838-39, and the trial court's award must be based on supporting evidence. See Ford Motor Co. , 363 S.W.3d at 578.
In reaching our conclusion that there was insufficient evidence to support the trial court's award of the entire amount sought by Appellee, we need only to look at a handful of the charges that appear on his billing statement. Some entries were so heavily redacted that the trial court could not possibly have had sufficient evidence to determine that the entire amount requested was "not excessive or extreme, but rather moderate or fair." See Sullivan , 488 S.W.3d at 299. For example, on March 16, 2014, Appellee's attorney billed 5.5 hours totaling $3,025 for work described as follows:
Exchange several e-mails with [Appellee] regarding [Redacted]; adjust as necessary (.60 Hours) complete drafting [Appellee] affidavit; (.30 hours) exchange several e-mails with [Appellee] regarding [Redacted] (.80 Hours) continue researching and drafting [Appellee's] [Redacted] 3.80 Hours[.]
From this entry, the trial judge could glean only that the attorney exchanged several emails with his client, adjusted something, completed drafting an affidavit of some sort, and continued researching and drafting something else.
*822 A closer look at other entries in the billing affidavit shows that Appellee sought-cumulatively-more than $1,000 in attorney's and support staff fees for tasks that were so heavily redacted as to be meaningless:
• Review emai [sic] [Redacted]; (.40 Hours) transmit revised [Redacted] review [Redacted] (.30 Hours);[3]
• [R]eview [Redacted] respond;[4]
• [R]eview and respond [Redacted];[5]
• Review and respond [Redacted];[6]
• Review [Redacted];[7]
• Review [Redacted]; (.20 Hours) review [Redacted] respond; (.20 Hours) review various documents transmitted [Redacted] (.30 Hours);[8]
• [R]eview email [Redacted];[9]
• [Redacted];[10]
• [R]eview proposed [Redacted];[11]
• [R]eview [Redacted];[12]
• Review [Redacted];[13]
• [Redacted];[14]
• [S]upervise [Redacted].[15]
See id. at 299 (holding that proof of attorney's fees "must be sufficient to permit a court 'to perform a meaningful review of their fee application' "). Other, less brutally redacted entries provided some information but still stopped short of providing any meaningful evidence of the tasks performed:
• Review multiple correspondence from client regarding [Redacted];[16]
• Research internet for articles and information related [Redacted] and forward to attorney ...;[17]
• Respond to client inquiry about [Redacted];[18]
• Review e-mail from [Redacted] and respond;[19]
• [R]eview e-mail from [Appellee] asking for advise [sic] [Redacted] respond to advise [sic];[20]
*823 • [T]elephone conference with [Appellee] [Redacted];[21]
• Exchange several e-mails with [Appellee] regarding plaintiffs' [Redacted];[22]
• Review e-mail from [Appellee] transmitting screen shot of online posting [Redacted] (.10 hours) email to [Appellee] to [Redacted] (.30 hours).[23]
Admittedly, the content of some of the redacted matters may have involved communications between attorney and client.[24] But a trial court is not at liberty to blindly assume that fees for every communication between counsel and client should, in fairness, be awarded in a lawsuit. To the contrary, Appellee's own evidence demonstrates that that is not necessarily the case.
For example, part of the $300,838.84 awarded included a charge for work performed on March 7, 2014-prior to being served and more than a week before Appellee made his first appearance in this lawsuit[25] -for legal work related not only to a different case but also one in which Appellee was not a party. On that day, Appellee's attorney billed for .80 hours of work to "retrieve and review plaintiff's original complaint in McGibney v. Retlaff [sic] filed on March 6, 2014, in the Northern District of California," only to advise his client that he was not a defendant in that lawsuit.[26] There can be no doubt that at least this unredacted entry about a communication between attorney and client could not fairly be awarded as attorney's fees in the instant case.
Other entries have dubious relevance to this lawsuit. For example, on March 19, March 20, and April 11, 2014, Appellee's attorney billed 4.9 hours for what can only be characterized as "oppo research"[27] -on *824 then-opposing counsel John Morgan-on matters wholly unrelated to this suit:
Contact Tarrant County district clerk to get update of filings in the John Morgan V. Shane Phelps, et al. case no. D195,081. Research internet for publicity surrounding the case; check various internet sites for details of Judge Layne Walker and his involvement with John Morgan....[28 ]
Continue research on cases filed by plaintiff and research internet looking for new disciplinary proceedings against plaintiff's attorney.
[R]eview information that plaintiffs' counsel John S. Morgan has been arrested and has pled guilty to making a false report to a police officer; review arrest report and commitment order.
Other charged services went well beyond the depth of research and preparation ordinarily expended in the early stages of any lawsuit. In fact, a review of the entire 23 pages of billing records attached to Appellee's attorney's affidavit reveals a troublesome pattern of heavy front-end loading of legal work that might very well have been reasonable, if the case had ever moved beyond the chapter 27 dismissal stage,[29] but was nevertheless premature and of questionable reasonableness in the early stages of the lawsuit.
Even more troubling is the fact that Appellee was never served in this lawsuit and, thus, was never under any compunction to appear in the lawsuit whatsoever. See Rauhauser I , 508 S.W.3d at 382 (setting forth then-appellees' argument that Appellee had not been served with citation when he filed his motion to dismiss and that he had been aware that they were going to nonsuit before he filed his motion).[30] Just a few hours after Appellee *825 filed his motion to dismiss under chapter 27, Appellants nonsuited the entire cause of action, leaving pending only Appellee's requests for sanctions and attorney's fees under chapter 27. See ids="12371341" index="22" url="https://cite.case.law/sw3d/508/377/#p380">id. at 381-82.
According to Appellee's attorney's affidavit, less than a week before the May 21, 2014 hearing on the chapter 27 motion, Appellee had already amassed $66,955.50 in attorney's fees, representing 144.30 hours.[31] Adding insult to injury, Appellee was also billed $13,585 for two attorneys to travel to Fort Worth, attend the hearing on the motion to dismiss, and return to Houston. These are other factors that the trial court should consider in determining a reasonable amount of attorney's fees to be awarded here.
Other areas of legal work that appear in this record also give us pause, including the numerous hours devoted to reviewing not only the rulings or holdings of particular cases but also the entire records of those cases. We find particularly troublesome the practice of reviewing the entire files of trial court cases outside of this court's jurisdiction, when the rulings from those cases would yield no authoritative-or even persuasive-authority to guide the trial court in the instant case. For example, on March 26, 2014-eight days after Appellee filed his special appearance in this case-Appellee's attorney had already billed for the following research:
Review entire case file in the trial court in Cause No. DC-11-13741; American Heritage Capital, LP v. Gonzalez; in the 68th District Court of Dallas County, Texas[32 ]; including pleadings, motions to dismiss, and court order gra[n]ting motion to dismiss and awarding attorney's fees and sanctions....
The billing records contain other similar examples of research of cases at the trial court level.
Other charges were obviously not for the client's benefit but rather for the benefit of the attorney himself, such as the .70 hours billed on June 12, 2014, which related to an alleged internet and social attack against Appellee's attorney, not Appellee.
The examples cited above are not an exhaustive list of the billing entries submitted in this case that lead us to conclude *826 that the amount awarded was not reasonable.[33] These specific entries are cited merely to illustrate the shortage of evidence and some of the gaps in proof that should have prevented the trial court from awarding 100% of the attorney's fees billed and sought by Appellee. These examples illustrate that the trial court failed to consider and weigh the evidence of attorney's fees in a thorough manner and apply guiding rules and principles to determine which charges were reasonable, as the trial court should have. Accordingly, we sustain this portion of Appellants' second issue.
3. The 18.001 Affidavit
Appellee argues that the trial court was nevertheless required to award all fees sought. According to Appellee, because he proved his attorney's fees in an "18.001" affidavit, Appellants were precluded at the trial court level and now on appeal from challenging reasonableness. We disagree.
In civil cases not involving a suit on a sworn account, a party may prove that a service was reasonable and necessary[34] by submitting an affidavit in compliance with civil practice and remedies code section 18.001. Tex. Civ. Prac. & Rem. Code Ann. § 18.001 (West 2015). If service and the substance of the affidavit comply with section 18.001 's requisites, the affidavit "is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable." Id. § 18.001(b). Section 18.001 serves to streamline proof of reasonableness and necessity and is especially useful in cases in which the damage elements of reasonableness and necessity are not contested. See Haygood v. De Escabedo , 356 S.W.3d 390, 397 (Tex. 2011) (observing that section 18.001, which is "purely procedural," provides for the use of affidavits "to streamline proof of the reasonableness and necessity" of expenses but "does not establish that billed charges are reasonable and necessary").
We will set aside the question as to whether Appellee's attorney's affidavit complied with civil practice and remedies code section 18.001 and assume, without holding, that it did. With that assumption, the question becomes whether Appellants can challenge the reasonableness of the fees awarded on appeal.
To challenge the reasonableness of the amount charged for a service after a proper 18.001 affidavit has been filed, the opponent must file and serve a controverting affidavit in compliance with 18.001. See Tex. Civ. Prac. & Rem. Code Ann. § 18.001(e) - (f). If the opponent's controverting affidavit is properly prepared and served, then the original 18.001 affidavit no longer suffices to prove that the amount charged was reasonable. See itation index="27" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%2018.001">id. § 18.001(b). Thus, by filing a proper controverting affidavit, the opposing party can force the party with the burden of proof to prove reasonableness through expert testimony. Hong v. Bennett , 209 S.W.3d 795, 801 (Tex. App.-Fort Worth 2006, no pet.). Here, Appellants filed no controverting 18.001 affidavit.
*827 Appellee argued to the trial court that because Appellants did not challenge his 18.001 affidavit with a controverting affidavit, Appellants were precluded from challenging his attorney's fees evidence.
However, while an unchallenged 18.001 affidavit provides legally sufficient evidence at trial to support a finding that the amount charged was reasonable, the affidavit does not constitute conclusive proof. Id. at 800 ; see Atwood v. Pietrowicz , No. 02-10-00010-CV, 2010 WL 4261600, at *4 (Tex. App.-Fort Worth Oct. 28, 2010, no pet.) (mem. op.). In Atwood , the appellants contended that their uncontroverted 18.001 affidavits entitled them to recover the amounts reflected therein as a matter of law. 2010 WL 4261600, at *3. But as we explained,
Section 18.001 affidavits do not establish that the [fees] were caused by the defendant's actions or that the plaintiffs are entitled to those [fees] as a matter of law. Sloan v. Molandes , 32 S.W.3d 745, 752 (Tex. App.-Beaumont 2000, no pet.) ; Beauchamp v. Hambrick , 901 S.W.2d 747, 749 (Tex. App.-Eastland 1995, no writ). It is an evidentiary statute allowing for the admissibility of affidavits that would otherwise be considered hearsay.
Id. at *4 (holding that the Atwoods were still required to demonstrate that the services were sought as a result of Pietrowicz's actions).
This rule does not change in the context of chapter 27 hearings. As the supreme court has instructed us, in the context of a chapter 27 dismissal hearing, the judge, as the factfinder, must determine whether the amount is "not excessive or extreme, but rather moderate or fair." Sullivan , 488 S.W.3d at 299.
The gist of Appellants' argument on appeal is that because the charges in Appellee's 18.001 affidavit were excessive, as opposed to moderate or fair, the trial court erred by awarding the entire amount sought. For the reasons already set forth above, we agree. Consequently, we sustain this part of Appellants' second issue. On remand, the court should consider in its determination and award of reasonable attorney's fees, among other factors, Appellee's choice to file an answer before service of citation, his knowledge of the upcoming nonsuit, and his intent to use a dismissal in another lawsuit against him by the same plaintiffs. See Rauhauser I , 508 S.W.3d at 382 & n.3.
B. Complaint as to the Award of Conditional Appellate Fees
In Appellants' seventh issue, they argue that the manner in which the trial court awarded conditional appellate attorney's fees is not authorized by law. In its "Order Awarding Attorney Fees and Sanctions," the trial court ordered "[c]onditional attorney's fees of $50,000.00 for a second appeal to the court of appeals, which such appeal does not result in a complete reversal of all amounts awarded. " [Emphasis added.] We agree that the trial court improperly conditioned the award of attorney's fees.
In considering the propriety of awarding appellate attorney's fees, we begin with the general rule that because a party should not be penalized for successfully appealing an error occurring in a lower court, appellate attorney's fees must be conditioned upon a successful appeal. Lawry v. Pecan Plantation Owners Ass'n , No. 02-15-00079-CV, 2016 WL 4395777, at *9 (Tex. App.-Fort Worth Aug. 18, 2016, no pet.) (mem. op.); Solomon v. Steitler , 312 S.W.3d 46, 59 (Tex. App.-Texarkana 2010, no pet.) ("The trial court may not grant an award of appellate attorney's fees unless such award is conditioned on a successful appeal, as doing so could penalize a *828 party for pursuing a meritorious appeal."); see also Ventling v. Johnson , 466 S.W.3d 143, 155 (Tex. 2015) (holding that when appellant partially prevailed on her appeal and both parties presented evidence in the trial court on the proper amount of attorney's fees for the appeal, "while the trial court has discretion as to the amount of reasonable and necessary appellate attorney's fees, it had no discretion to award Johnson no fees").
Here, Appellants point out that given the appellate history of this case, the trial court's conditioning of the award of appellate attorney's fees on a "complete reversal" created an "impossibility." Because of this court's prior holding that Appellee was entitled to some award of attorney's fees and sanctions, which has now become the law of the case, we agree that from the outset, Appellants were precluded from ever obtaining a "complete reversal of all amounts awarded." See Rauhauser I , 508 S.W.3d at 389-90 ; City of Aledo v. Brennan , Nos. 02-14-00147-CV, 02-14-00153-CV, 2016 WL 3157354, at *12 (Tex. App.-Fort Worth June 2, 2016, pet. denied) (mem. op.) (explaining "law of the case" doctrine as providing that "a decision rendered in a former appeal of a case is generally binding in a later appeal of the same case"). As Appellants pointed out, "The Court of Appeals ruled [Appellee] is entitled to an award of fees and sanctions. [Appellants] do not now contest this, nor would they ever appeal on these grounds as this issue has already been decided."[35]
Appellee offered three sentences in response: "[Appellants] complain that the 'condition' imposed by the trial court for recovery of fees is 'impossible.' [Appellants] do not explain why the condition of success on appeal is 'impossible,' nor do [Appellants] reveal what condition they might find acceptable. [Appellants] lose." We disagree.
Given our holding above that sustains Appellants' complaint about the amount of attorney's fees awarded, Appellants have partially succeeded in prosecuting this appeal. See Intercont'l Grp. P'ship v. KB Home Lone Star L.P. , 295 S.W.3d 650, 655 (Tex. 2009) (holding that "[w]hether a party prevails turns on whether the party prevails upon the court to award it something," and explaining that a party who "sought over $1 million in damages, but instead left the courthouse empty-handed [was] '... not the stuff of which legal victories are made' " (quoting Hewitt v. Helms , 482 U.S. 755, 760, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987) ); see also Farrar v. Hobby , 506 U.S. 103, 111, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) (holding that in a civil rights suit, "at least some relief on the merits" must be obtained by a party to qualify as a "prevailing party"). To avoid penalizing Appellants for successfully prosecuting their appeal, Appellants should not be made to pay for the appellate attorney's fees that Appellee incurred in his unsuccessful defense of his attorney's fees. See Lawry , 2016 WL 4395777, at *9 ; Solomon , 312 S.W.3d at 59.
Because the trial court's conditioning of the award of appellate attorney's fees worked to reward the unsuccessful party and to punish the successful party on appeal, we sustain Appellants' seventh issue. See, e.g. , Halleman v. Halleman , Nos. 02-11-00238-CV, 02-11-00259-CV, 2011 WL 5247882, at *3, *5 n.5 (Tex. App.-Fort Worth Nov. 3, 2011, orig. proceeding) (mem. op.) (observing that "conditional" language entitling real party in interest to $50,000 if appellate court affirmed in whole or in part the trial court's divorce judgment *829 was virtually guaranteed because neither party seemed likely to contest portion of judgment granting their divorce).
C. Complaint as to the Trial Court's Failure to Timely Rule
In Appellants' sixth issue, they complain that the trial court's delay in ruling caused higher attorney's fees to be incurred.
Generally speaking, there is little disagreement among courts and commentators alike that delay increases costs. See , e.g. , Carrie E. Johnson, Comment, Rocket Dockets: Reducing Delay in Federal Civil Litigation , 85 Cal. L. Rev. 225, 225 (1997) ("Courts and commentators agree that civil docket delay in the federal courts is a serious problem, undermining justice and increasing costs to both litigants and society in general."). And we have previously found in this case that the trial judge failed to rule on the motion to dismiss within the time prescribed by law. Rauhauser I , 508 S.W.3d at 381. Nevertheless, to the extent that Appellants' sixth issue identifies a wrong, it is a wrong without remedy.
In ordinary cases, a trial court's failure to rule within a reasonable time period constitutes an abuse of discretion for which the remedy of mandamus is available. See In re Granite Shop , No. 02-08-00410-CV, 2009 WL 485696, at *2 (Tex. App.-Fort Worth Feb. 24, 2009, orig. proceeding) (mem. op.). But in an action under the TCPA, a trial court's failure to rule on a motion to dismiss within the time mandated by law has a statutory remedy-the motion is denied by operation of law. Tex. Civ. Prac. & Rem. Code Ann. §§ 27.005(a), .008(a). Immediately thereafter, an interlocutory appeal may be taken. Id. § 27.008(a); see In re Lipsky , 460 S.W.3d 579, 585 n.2 (Tex. 2015) (orig. proceeding) (explaining that the legislature has clarified that interlocutory appeal is permitted under the TCPA); cf. In re Van Waters & Rogers, Inc. , 145 S.W.3d 203, 210-11 (Tex. 2004) (orig. proceeding) ("Absent extraordinary circumstances, mandamus will not issue unless defendants lack an adequate appellate remedy."). Here, Appellee appealed the trial court's denial-by operation of law-of his motion to dismiss, resulting in a reversal of the trial court's order and the case's remand back to the trial court to consider attorney's fees and sanctions. Rauhauser I , 508 S.W.3d at 380, 390.
Appellants now complain that the trial court's delay in ruling "resulted in windfall profits for [Appellee's] attorneys and multiplied the fee award against [Appellants] six times over." Even if we were to assume the correctness of Appellants' assertion, Appellants point to no additional legal relief to which they would be entitled to rectify the problem, and we can find none. As discussed above, chapter 27 mandates that, as the prevailing party, Appellee will recover reasonable attorney's fees. See Tex. Civ. Prac. & Rem. Code Ann. § 27.009 (stating that if the trial court orders dismissal of a legal action under chapter 27, it "shall" award to the moving party "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require"). That these attorney's fees may have multiplied due to the trial court's delay in ruling on the motion to dismiss in a more expeditious fashion provides no exception under the statute. See generally itation index="60" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%2027.009">id. § 27.010 (listing exemptions for state enforcement actions, commercial transactions, personal injury, wrongful death, or cases brought under the insurance code or arising out of an insurance contract). We overrule Appellants' sixth issue.
*830 III. Sanctions
In issues three and four, Appellants contend that the trial court erred in its imposition of non-monetary sanctions and that the monetary sanctions awarded were impermissibly punitive rather than a deterrent. We review a trial court's imposition of sanctions under an abuse of discretion standard. Nath v. Tex. Children's Hosp. , 446 S.W.3d 355, 361 (Tex. 2014) (reviewing sanctions under civil practice and remedies code chapter 10 and rule of civil procedure 13 ); see also Ball v. Rao , 48 S.W.3d 332, 338 (Tex. App.-Fort Worth 2001, pet. denied).
A. Complaint as to Non-Monetary Sanctions
In issue four, Appellants argue that the trial court's imposition of nonmonetary sanctions was improper as beyond the TCPA's scope and thus constituted an abuse of discretion.[36] The statute permitting the assessment of sanctions, entitled "Damages and Costs," provides,
(a) If the court orders dismissal of a legal action under this chapter, the court shall award to the moving party:
(1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and
(2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.
Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a). Here we are asked to determine whether the phrase "shall award to the moving party ... sanctions" empowers a trial court to impose non-monetary sanctions, or whether the trial court's authority to award sanctions is limited solely to monetary sanctions. The key to that determination is found in the legislature's choice of the word "award."
As with any statutory term, we give effect to the legislature's intent in using the word "award" by looking to the plain meaning of the word. See Molinet v. Kimbrell , 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results."). We not only must presume that the legislature deliberately and purposefully selected this particular word but also must presume that it deliberately and purposefully omitted words that it did not intend to include. See Wasson Interests, Ltd. v. City of Jacksonville , 489 S.W.3d 427, 438 (Tex. 2016) (citing Tex. Mut. Ins. Co. v. Ruttiger , 381 S.W.3d 430, 452 (Tex. 2012) (op. on reh'g) ). When looking at the plain meaning of a particular word, the Code Construction Act also directs us that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Tex. Gov't Code Ann. § 311.011(b) (West 2013). Thus, when considering the meaning of a word chosen by the legislature, we look at how the word is applied in the larger legislative scheme. See itation index="68" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%20311.011">id.
The Texas Civil Practice and Remedies Code had its genesis in the Texas Statutory *831 Revision Program of 1963, the purpose of which was "to clarify and simplify the statutes in order to make them more accessible, understandable, and usable." Ron Beal, The Art of Statutory Construction: Texas Style , 64 Baylor L. Rev. 339, 356 (2012). Consistent with its name, the civil practice and remedies code includes procedures and, more germane to our analysis, remedies available in Texas civil legal actions. Compare Tex. Civ. Prac. & Rem. Code Ann. §§ 15.001 -.007 (West 2017) (general venue rules), and itation index="71" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%C2%A7%2015.001">id. § 16.004 (West 2002) (four-year limitations period), with id. §§ 31.001-43.005 (West 2015 & Supp. 2017) ("Subtitle C. Judgments"), and id. §§ 61.001-66.003 (West 2008 & Supp. 2017) ("Title 3. Extraordinary Remedies").
An examination of the entire civil practice and remedies code reveals consistency with regard to the use of the term "award."[37] In the code, the word "award" is used exclusively in circumstances where a monetary remedy is available. See generally id. §§ 10.002-16.0038 (West 2017 & Supp. 2017), §§ 16.004-.037 (West 2002 & Supp. 2017), §§ 16.051-52.006 (West 2015 & Supp. 2017), §§ 61.001-72.004 (West 2008 & Supp. 2017), §§ 73.001-92A.003 (West 2017 & Supp. 2017), §§ 93.001-173.004 (West 2011 & Supp. 2017). In the sections of the code where the legislature specifically empowered courts to levy non-monetary sanctions, it chose a different word-"impose"-to describe the remedy. See id. §§ 9.012, 10.004(a) (West 2017), § 90.054. In every other statute within the code-except for provisions applicable to arbitration awards-the legislature used the word "award" (or, occasionally, "assess")[38] when courts are not specifically empowered to levy non-monetary sanctions but are statutorily authorized to provide damages, monetary sanctions, attorney's fees, or costs, as set out below:
• Sanctions for Frivolous Pleadings and Motions. Under section 10.002(c), "The court may award ... reasonable expenses and attorney's fees ... and ... the court may award ... all costs for inconvenience, harassment, and out-of-pocket expenses...." Id. § 10.002(c) (emphasis added).
• Liability for Fraudulent Records or Deeds. Under section 12.006, "The court shall award the plaintiff the costs of bringing the action ... [including] all court costs, attorney's fees, and related expenses of bringing the action, including investigative expenses." Id. § 12.006(a)-(b) (emphasis added).
*832 • Limitations on Real Property Actions. Under section 16.034, "if the prevailing party recovers possession of the property from a person unlawfully in actual possession the court ... shall award costs and reasonable attorney's fees...." Id. § 16.034(a)(1) (emphasis added).
• Class Actions. Under section 26.003, "If an award of attorney's fees is available under applicable substantive law...." Id. § 26.003(a) (emphasis added).
• Recusal or Disqualification of Certain Judges. Under section 30.016(c), "A judge hearing a tertiary recusal motion against another judge who denies the motion shall award reasonable and necessary attorney's fees and costs to the party opposing the motion." Id. § 30.016(c) (emphasis added).
• Miscellaneous Provisions. Under section 30.021, on a trial court's granting or denial of a motion to dismiss a case for having no basis in law or fact "the court shall award costs and reasonable and necessary attorney's fees to the prevailing party." Id. § 30.021 (emphasis added).
• Declaratory Judgments. Under section 37.009, "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees...." Id. § 37.009 (emphasis added). Cf. id. § 140.006 (providing that notwithstanding section 37.009, if a declaratory judgment action is brought under chapter 140-"Contractual Subrogation Rights of Payors of Certain Benefits"-"the court may not award costs or attorney's fees to any party in the action" (emphasis added) ).
• Availability of Certain Funds to Pay Damages. Under section 40.001(b), "A claimant may not collect damages awarded against an institution, facility, or program...." Id. § 40.001(b) (emphasis added).
• Damages. Sections 41.002 through 41.011 contain the following: "This chapter establishes the maximum damages that may be awarded in an action subject to this chapter, including an action for which damages are awarded ...." Id. § 41.002(b) (emphasis added). "[E]xemplary damages may be awarded only if ... the claimant seeks recovery of exemplary damages...." Id. § 41.003(a) (emphasis added). "Exemplary damages may be awarded only if...." Id. § 41.003(d) (emphasis added). "Except as provided ... exemplary damages may be awarded only if damages other than nominal damages are awarded. " Id. § 41.004(a) (emphasis added). "Exemplary damages may not be awarded to a claimant who elects...." Id. § 41.004(b) (emphasis added). "[A] court may not award exemplary damages...." Id. § 41.005(a) (emphasis added). "[A]n award of exemplary damages must be specific ... and each defendant is liable only for the amount of the award made...." Id. § 41.006 (emphasis added). "Prejudgment interest may not be assessed or recovered on an award of exemplary damages." Id. § 41.007 (emphasis added). "Exemplary damages awarded ...." Id. § 41.008(b) (emphasis added). "[T]he amount of exemplary damages to be awarded ...." Id. § 41.009(d) (emphasis added). "Before making an award of exemplary damages...." Id. § 41.010(a) (emphasis added). "[W]hether to award exemplary damages and the amount of exemplary *833 damages to be awarded ...." Id. § 41.010(b) (emphasis added). "[R ]ecovery of medical or health care expenses incurred...." Id. § 41.0105 (emphasis added). "[T]he amount of exemplary damages that may be awarded...." Id. § 41.011(b) (emphasis added).
• Settlement. Under section 42.004(a)-(g), "[T]he offering party shall recover litigation costs from the rejecting party ... if ... the rejecting party is a claimant and the award will be less than 80 percent ...; or the rejecting party is a defendant and the award will be more than 120 percent...." Id. § 42.004(a)-(b) (emphasis added). "The litigation costs that may be recovered by the offering party under this section are limited to those litigation costs incurred...." Id. § 42.004(c) (emphasis added). "The litigation costs that may be awarded under this chapter to any party may not be greater than the total amount that the claimant recovers ...." Id. § 42.004(d) (emphasis added). "If a claimant or defendant is entitled to recover fees and costs under another law, that claimant or defendant may not recover litigation costs in addition to the fees and costs recoverable under the other law." Id. § 42.004(e) (emphasis added). "If a claimant or defendant is entitled to recover fees and costs under another law, the court must not include fees and costs incurred by that claimant or defendant...." Id. § 42.004(f) (emphasis added). "If litigation costs are to be awarded against a claimant, those litigation costs shall be awarded to the defendant in the judgment...." Id. § 42.004(g) (emphasis added).
• Wrongful Death. Under section 71.010(a)-(b), "The jury may award damages" and "[t]he damages awarded shall be divided ... among the individuals who are entitled to recover ...." Id. § 71.010(a)-(b) (emphasis added).
• Medical Liability. Under section 74.351(b)(1), when an expert report has not been timely served, the court "on the motion of the affected physician or health care provider, shall ... enter an order that ... awards ... reasonable attorney's fees and costs of court incurred by the physician or health care provider," id. § 74.351(b)(1) (emphasis added), and under section 74.507, "[f]or purposes of computing the award of attorney's fees when the claimant is awarded a recovery ... the court shall...." Id. § 74.507 (emphasis added).
• Sexual Exploitation by Mental Health Services Provider. Under section 81.004(a)-(b), "A plaintiff ... may recover actual damages ... [and] [i]n addition to an award under Subsection (a), a plaintiff ... may recover exemplary damages and reasonable attorney fees." Id. § 81.004(a)-(b) (emphasis added).
• Liability for Trafficking of Persons. Under section 98.003(a), "A claimant who prevails in a suit under this chapter shall be awarded ... actual damages, ... court costs[,] and reasonable attorney's fees." Id. § 98.003(a)(1)-(3) (emphasis added). And under section 98.003(b), "In addition to an award under Subsection (a), a claimant ... may recover exemplary damages." Id. § 98.003(b) (emphasis added).
• Liability for Compelled Prostitution and Certain Promotion of Prostitution. Under section 98A.003(a), "A claimant ... shall be awarded ... actual damages, including *834 damages for mental anguish[,] ... court costs[,] ... and reasonable attorney's fees." Id. § 98A.003(a)(1)-(3) (emphasis added). Under section 98A.003(b), "In addition to an award under Subsection (a), a claimant ... may recover exemplary damages." Id. § 98A.003(b) (emphasis added).
• Unlawful Disclosure or Promotion of Intimate Visual Material. Under sections 98B.003 and 98B.004, "A claimant ... shall be awarded ... actual damages, including damages for mental anguish[,] ... court costs[,] and reasonable attorney's fees.... In addition to an award under Subsection (a), a claimant ... may recover exemplary damages," and "[a] court that issues a temporary restraining order or a temporary or permanent injunction ... may award ... damages in the amount of...." Id. §§ 98B.003, .004(b) (emphasis added).
• Abatement of Certain Common Nuisances. Under sections 125.003(d) and 125.068, "the court may award a prevailing party reasonable attorney's fees...." Id. §§ 125.003(d), .068 (emphasis added).
• Suits Against Sporting Range or Firearms or Ammunition Manufacturer, Trade Association, or Seller. Under section 128.053(b), if an expert report is not timely filed, on the motion of the affected defendant, the court shall enter an order "that awards to the affected defendant attorney's fees and costs of court incurred by the defendant." Id. § 128.053(b)(1) (emphasis added).
• Violation of Collegiate Athletic Association Rules. Under section 131.008, "[a] regional collegiate athletic association or institution that prevails in an action under this chapter is entitled to an award of reasonable attorney's fees and costs." Id. § 131.008 (emphasis added).
• Trade Secrets. Under section 134A.005, "[t]he court may award reasonable attorney's fees to the prevailing party...." Id. § 134A.005 (emphasis added).
• Arbitration. Under section 171.048, arbitrators "shall award attorney's fees ... only if the fees are provided for...." Id. § 171.048(c) (emphasis added).
In contrast, in the rare sections under which nonmonetary sanctions are authorized, the legislature chose not to use the word "award," but instead, in all but one instance,[39] used the word "impose":
• Frivolous Pleadings and Claims. Under section 9.012(c) and (e), "the court shall ... impose an appropriate sanction on the signatory, a represented party, or both.... The sanction may include one or more of the following: (1) the striking of a pleading or the offending portion thereof; (2) the dismissal of a party; or (3) an order to pay ... the amount of reasonable expenses incurred because of the filing of the pleading, including costs, reasonable *835 attorney's fees, witness fees, fees of experts, and deposition expenses." Id. § 9.012(c), (e) (emphasis added).
• Sanctions for Frivolous Pleadings and Motions. Under section 10.004, "A court that determines that a person has signed a pleading or motion in violation of Section 10.001 may impose a sanction ... limited to what is sufficient to deter repetition of the conduct ... [and] may include any of the following: (1) a directive to the violator to perform, or refrain from performing, an act; (2) an order to pay a penalty into court; and (3) an order to pay to the other party the amount of reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees." Id. § 10.004(a)-(c) (emphasis added).
• Failure to Make Trust Claim or Provide Notice and Trust Claim Material. Under section 90.054, "If a claimant received compensation from an asbestos or silica trust for an injury that also gave rise to a judgment against a defendant for the same injury and the claimant failed to serve" the statutorily required notice, "the trial court ... may impose an appropriate sanction, including setting aside the judgment and ordering a new trial." Id. § 90.054(b) (emphasis added).
Thus, under the statutory scheme provided in the civil practice and remedies code, it appears that the plain meaning of the word "award" means to assess a monetary amount, whereas the word "impose" may confer a larger grant of authority, such as to impose non-monetary sanctions.
In section 27.009, the legislature once again employed the word, "award." Because it chose "award," rather than "impose" and did not-as it did in sections 9.012(3), 10.004, 90.054, and 140A.102(a) -expressly confer the power to impose nonmonetary sanctions, we hold that section 27.009 does not authorize the imposition of nonmonetary sanctions. Because a trial court does not have discretion to misapply the law, the trial court here abused its discretion by imposing non-monetary sanctions. See Walker v. Packer , 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding) ("A trial court has no 'discretion' in determining what the law is or applying the law to the facts."). Accordingly, we sustain Appellants' fourth issue.
B. Complaint that Excessive Sanctions Punished Rather than Deterred
In issue three, Appellants complain that the trial court's award of $150,000 in sanctions was excessive and impermissibly punitive-rather than a deterrent of future conduct-thus violating due process because they nonsuited their lawsuit only weeks after filing it and because McGibney testified about his and ViaView's low net worth.
1. Evidence
McGibney stated in an affidavit attached to his supersedeas filing that his net worth was $258.47 and that ViaView's net worth was $7.02.
Appellee points to two items of "evidence" in the record to support the award, which he attached to his response and objection to Appellants' motion for new trial. The first item referenced by him purports to show that two years prior to filing the lawsuit, in 2012, McGibney made a $1 million business offer. The second purports to show that in 2013, McGibney referred to ViaView as a "company that *836 makes a few million dollars a year."[40] However, even assuming such statements made years before the lawsuit was filed had any relevance to proving the current value of present day assets, we do not consider these items in our review of the trial court's award of monetary sanctions because these items were never offered into evidence. Compare Tex. R. Evid. 401 (defining relevant evidence as having any tendency to make a fact of consequence in determining the action more or less probable), with Thomas v. Oldham , 895 S.W.2d 352, 359 (Tex. 1995) ("The standard for measuring damage to personal property is the difference in its market value immediately before and immediately after the injury, at the place where the damage occurred."), Exxon Corp. v. Middleton , 613 S.W.2d 240, 246 (Tex. 1981) (op. on reh'g) (stating that market value may be calculated by using comparable sales and reciting that comparable sales of gas are those "comparable in time, quality, quantity, and availability of marketing outlets"), Fix It Today, LLC v. Santander Consumer USA, Inc. , No. 02-14-00191-CV, 2015 WL 2169301, at *4 (Tex. App.-Fort Worth May 7, 2015, no pet.) (mem. op.) (requiring party to show reasonable cash market value at the time and place of conversion, in addition to other elements, to prevail on conversion claim), and EnviroPower, L.L.C. v. Bear, Stearns & Co. , 265 S.W.3d 1, 7 (Tex. App.-Houston [1st Dist.] 2008, pet. denied) (defining "current net worth" under rule of appellate procedure 24.2 as "total current assets minus ... total current liabilities" (emphasis added) ).
2. Excess
Appellee also urges the application of the "Gore Guideposts," see BMW of N. Am., Inc. v. Gore , 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), and cites examples of the "reprehensibility" of Appellants' conduct, both before and during the course of litigation.
We reject Appellee's contention that the "Gore Guideposts" are applicable here. In Gore , the Supreme Court set forth three factors to consider in determining whether punitive damages are excessive and thus violative of due process: (1) the reprehensibility of the defendant's conduct; (2) the ratio between the penalty and the actual harm suffered by the plaintiff; and (3) the relative severity of civil or criminal penalties imposed for the defendant's transgressions or comparable misconduct. See ids="11745877" index="130" url="https://cite.case.law/us/517/559/">id. at 574-75, 116 S.Ct. at 1598-99. These factors-focused on the severity of the underlying tort and the degree of the actor's culpability-do not apply here, however, because the sanctions authorized under section 27.009, unlike the punitive damages addressed in Gore , are not aimed to punish but rather only to deter. See Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a)(2).
We agree that based on the meager evidence before us, the $150,000 sanction award was excessive. We sustain Appellants' third issue.
IV. Other Findings
Appellants complain, in issue five, that the trial court erred by making a finding of "willfulness and maliciousness" without the authority to do so. We agree.
Chapter 27 permits the trial court to make additional findings upon the movant's request. See Tex. Civ. Prac. & Rem. Code Ann. § 27.007(a) (providing for findings "regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional *837 rights and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation"). And while findings of "willfulness and maliciousness" are not among the findings listed, in Texas statutes, the word "including" is a term of enlargement, not of limitation. Tex. Gov't Code Ann. § 311.005(13) (West 2013); see Tex. W. Oaks Hosp., LP v. Williams , 371 S.W.3d 171, 179 (Tex. 2012) (holding that legislature's use of the term "including" meant that statutory definition was nonexclusive); Entergy Gulf States, Inc. v. Summers , 282 S.W.3d 433, 440-41 (Tex. 2009) (op. on reh'g) ("Inasmuch as we have been instructed [by government code section 311.005(13) ] that " '[i]ncludes" and "including" are terms of enlargement and not of limitation or exclusive enumeration,' we are restrained from circumventing Legislative intent by excluding from a non-exhaustive list a term as similar as 'owner contractor.' " (citation omitted) ); Vision 20/20, Ltd. v. Cameron Builders, Inc. , 525 S.W.3d 854, 857 (Tex. App.-Houston [14th Dist.] 2017, no pet.) ("In Texas statutes, 'includes' and 'including' are terms of enlargement and not of limitation."). Therefore, the phrase, "and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation," Tex. Civ. Prac. & Rem. Code Ann. § 27.007(a), is not limited to the three improper purposes listed therein. But the question remains as to whether "willfulness and maliciousness" can be fairly characterized as a type of "improper purpose" under the statute. See itation index="139" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%2027.007">id.
Willfulness is a type of mens rea and, as such, describes the state of mind of an actor at the time an act was performed. See Burnett Ranches, Ltd. v. Cano Petroleum, Inc. , 289 S.W.3d 862, 866 (Tex. App.-Amarillo 2009, pet. denied). In a civil context, to be willful, a party must be more than negligent and must act with purpose and design. Id. Thus, although the trial court's finding that Appellants acted willfully acknowledges that the court found that they acted with some purpose, a finding of willfulness, without more, stops short of identifying the actual purpose itself, e.g., "to harass," "to cause unnecessary delay," or "to increase the cost of litigation." See Tex. Civ. Prac. & Rem. Code Ann. § 27.007(a). The court's characterization of Appellants' conduct as "willful" may be descriptive, but it stops short of a finding of an improper purpose. Thus, it falls outside of the boundary of the findings permitted by section 27.007(a).
Malice, too, is a type of mens rea. See Foust v. Hefner , No. 07-13-00331-CV, 2014 WL 3928781, at *5 (Tex. App.-Amarillo Aug. 12, 2014, no pet.) (mem. op.). As with willfulness, a finding of malice is not tantamount to a finding of an improper purpose. Rather, it is an acknowledgement that-whether acting with purpose or without purpose-a person acted without justification or excuse or with ill will or wickedness of heart. See Malice , Black's Law Dictionary (10th ed. 2014). Again, while descriptive of an improper motive, this stops short of constituting the actual finding of an improper purpose contemplated by the statute. Thus, as with willfulness, maliciousness is a finding beyond those findings authorized by section 27.007(b). Accordingly, we sustain Appellants' fifth issue.[41]
*838 V. ViaView's "Counterclaims"
In its eighth issue, Appellants complain that ViaView was "never afforded the Opportunity to Pursue its Counterclaims per the Appellate order." Appellee argues that because ViaView nonsuited these claims, there were no claims to be pursued. The relevant chronology is as follows:
• February 19, 2014: Appellants sued Appellee for, among other things, business disparagement and for tortious interference with business relationships. See Rauhauser I , 508 S.W.3d at 380.
• March 20, 2014: Appellants filed a "Motion to Dismiss Without Prejudice" as to all of their claims. See ids="12371341" index="145" url="https://cite.case.law/sw3d/508/377/#p380">id. at 381.
• March 24, 2014: The trial court signed an order granting Appellants' motion and dismissing all of their claims against Appellee. See ids="12371341" index="146" url="https://cite.case.law/sw3d/508/377/#p380">id.
After the trial court subsequently declined to rule on Appellee's chapter 27 motion to dismiss, Appellee appealed to this court. See ids="12371341" index="147" url="https://cite.case.law/sw3d/508/377/#p380">id. We held, in part, that while Appellants had the absolute right to nonsuit their own claims, Appellee retained his right to remedies under chapter 27 because his chapter 27 motion to dismiss survived the nonsuit. Id. at 381-82. We remanded the case to the trial court to enter an order of dismissal and "for further proceedings relating to [Appellee]'s court costs, attorney's fees, expenses, and sanctions under section 27.009(a)(1) and (2) of the TCPA." Id. at 390.
In the opinion, we also held that
[t]o the extent that ViaView's claims against [Appellee] for business disparagement and for tortious interference with business relationships are not based on alleged communications made by [Appellee] in connection with an issue related to McGibney, [Appellee] has failed to meet his section 27.005(b) burden to obtain dismissal under the TCPA of those claims.
Id. Our mandate that issued on February 19, 2015, mirrored this holding with the following language: "We remand this case to the trial court to enter an order dismissing all claims against Rauhauser except ViaView's business disparagement claim and tortious interference with business relationship claim to the extent those claims are not based on communications by Rauhauser made in connection with an issue relating to McGibney." [Emphasis added.]
We did not hold, nor did the mandate command, that ViaView was entitled to pursue its claims for business disparagement and tortious interference with a business relationship. Our holding was a narrow one-that Appellee was not entitled to the remedies afforded to him under the TCPA under either of these two claims asserted against him by ViaView if they were not based on alleged communications made by Appellee and related to McGibney. See id.
Neither our holding nor the mandate revived the nonsuited claims. All of Appellants' claims remained nonsuited until the trial court signed a final judgment in this case on April 14, 2016. We overrule Appellants' eighth issue.
VI. ViaView's Defamation Claim
In their ninth issue, Appellants claim that ViaView cannot not be held liable under the TCPA because it had no standing to file suit for defamation and did not file suit for defamation against Appellee.
*839 Setting aside Appellants' assertion that ViaView did not have standing to file suit for defamation, their assertion that ViaView did not, in fact, file suit for defamation is not supported in the record. On February 19, 2014, Appellants-both McGibney and ViaView-filed their "Plaintiffs' Original Petition and Request for Injunctive Relief." On page 7 of their petition, Appellants asserted a cause of action for defamation against all named defendants, including Appellee, by pleading: "Plaintiffs, therefore, sue all Defendants for this pattern of defamation ... that includes defamation per se...." We note that both the subject of the sentence, "Plaintiffs," and the verb "sue" are plural, and only two plaintiffs were named in the lawsuit-McGibney and ViaView. Thus, whether ViaView had standing to do so or not, ViaView did sue Appellee for defamation and defamation per se.
As to Appellants' additional argument that ViaView did not have standing to maintain a defamation action, we do not address it herein, as Appellants wholly failed to brief this contention on appeal. See Tex. R. App. P. 38.1(i). We overrule Appellants' ninth issue.
VII. Conclusion
Having overruled Appellants' first, sixth, eighth, and ninth issues and part of Appellants' second issue, we affirm in part the trial court's judgment that some amount of attorney's fees should be awarded to Appellee. However, we sustain the portion of Appellants' second issue with regard to the amount of the attorney's fees awarded by the trial court and remand this portion of the case to the trial court once again to conduct a hearing on attorney's fees consistent with this opinion.
We likewise sustain Appellants' fourth issue with regard to the imposition of non-monetary sanctions, Appellants' third issue with regard to the $150,000 sanctions award, Appellants' fifth issue in part with regard to the trial court's "willfulness and maliciousness" findings, and Appellants' seventh issue with regard to the improper conditioning of appellate attorney's fees, and we vacate these portions of the trial court's judgment.

Those domain names were: nealrauhauser.com, nealrauhauser.net, nealrauhauser.org, nealrauhauser.info, nealrauhauser.exposed, and nealrauhauserunmasked.com.

Notwithstanding the fact that Sullivan holds expressly to the contrary, in their brief, Appellants cite Sullivan to argue that attorney's fees must be "required by justice and equity." See Tex. Disciplinary Rules Prof'l Conduct R. 3.03(a)(1) (providing that "a lawyer shall not knowingly make a false statement of ... law to a tribunal"), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2013).

This charge represents .07 hours of work performed on May 15, 2014.

This charge represents .30 hours of work performed on May 28, 2014.

This charge represents .30 hours of work performed on June 2, 2014.

This charge represents .30 hours of work performed on June 3, 2014.

This charge represents .20 hours of work performed on June 5, 2014.

This charge represents .70 hours of work performed on June 6, 2014.

This charge represents .20 hours of work performed on June 10, 2014.

This charge represents .50 hours of work performed on June 12, 2014.

This charge represents .20 hours of work performed on June 16, 2014.

This charge represents .30 hours of work performed on June 17, 2014.

The hours of work expended on this task on July 9, 2014 is unknown.

This charge represents an unknown portion of .70 hours of work performed on June 5, 2015.

This charge represents an unknown portion of .40 hours of work performed on June 8, 2015.

This charge represents .30 hours of work performed on March 27, 2014.

This charge represents an unknown portion of 2.6 hours of work performed on April 3, 2014.

This charge represents an unknown portion of .60 hours of work performed on April 17, 2014.

This charge represents .30 hours of work performed on May 27, 2014.

This charge represents .30 hours of work performed on December 11, 2014.

This charge represents 1.10 hours of work performed on December 15, 2014.

This charge represents .40 hours of work performed on May 29, 2015.

This charge represents .40 hours of work performed on June 10, 2015.

We are mindful of the need to protect attorney-client privileged communications, but in the examples we have cited, Appellee simply did not provide enough information to enable the court to base its decision to award 100% of the fees sought on sufficient evidence, as opposed to blind faith. And if a waiver of attorney-client privilege is necessary to provide sufficient information to meet Appellee's burden of proof, that is unavoidable. When seeking affirmative relief, the attorney-client privilege cannot be used both as a shield and a sword. See generally Republic Ins. Co. v. Davis , 856 S.W.2d 158, 163 (Tex. 1993) (orig. proceeding).

This is not to say that parties are precluded from recovering attorney's fees incurred prior to their first appearance or prior to the lawsuit's being filed. But a trial court should be vigilant to ensure that the charges are reasonable under the circumstances, especially when fee-shifting opportunities are on the horizon, because the ordinary market incentives to keep attorney's fees reasonable, i.e., what the market will bear, are not present when incurred with an eye toward getting someone else-an opponent-to foot the bill. See Sullivan , 488 S.W.3d at 299 ; see also Am. Heritage Capital, L.P. v. Gonzalez , 436 S.W.3d 865, 879-80 (Tex. App.-Dallas 2014, no pet.), disapproved of on other grounds by Hersh , 526 S.W.3d at 466-67 & nn.22-23.

After Appellee filed his motion to dismiss, in their notice of nonsuit, Appellants indicated that they had decided to pursue their claims in the California federal court. See Rauhauser I , 508 S.W.3d at 381. The amended petition in that case was filed on March 17, 2014, in the Northern District of California.

"Opposition research" or "oppo research" is an "[i]nvestigation into the dealings of political opponents, typically in order to discredit them publicly." Opposition Research , English Oxford Living Dictionaries, https://en.oxforddictionaries.com/definition/opposition research (last visited Apr. 6, 2018); see also "Opposition research," https://en.wikipedia.org/wiki/Opposition research (defining term as "the practice of collecting information on a political opponent or other adversary that can be used to discredit or otherwise weaken them") (last visited Apr. 6, 2018); see generally D Magazine Partners, L.P. v. Rosenthal , 529 S.W.3d 429, 435-37 (Tex. 2017) (discussing Wikipedia's viability as a legal source, noting its use as a source for definitions of new slang terms, popular culture references, jargon, and lingo, and concluding that while a bright-line rule on its usability as a source would be untenable, "it [is] unlikely Wikipedia could suffice as the sole source of authority on an issue of any significance to a case," although it "can often be useful as a starting point for research purposes").

We take judicial notice, as the trial court could have, that "D195,081" is not a valid file number for any civil case filed in the Tarrant County district courts. See Tex. R. Evid. 201. Nor is a "Judge Layne Walker" in any way related to this lawsuit, although a former judge by that name did gain some notoriety after being indicted in a Jefferson County courthouse corruption scandal-tangentially related to an anti-SLAPP case. See Walker v. Hartman , 516 S.W.3d 71, 74, 77-78, 84 (Tex. App.-Beaumont 2017, pet. filed) (affirming trial court's order denying motion to dismiss under TCPA when Hartman met his burden for each element of his malicious prosecution and civil conspiracy claims and Walker failed to meet his preponderance burden on his defenses); see also Hartman v. Walker , 685 Fed.Appx. 366, 368-69 (5th Cir. 2017) (affirming dismissal of Hartman's federal claims against Walker under federal rule of civil procedure 12(b)(6) ).

With regard to the motion to dismiss alone, Appellee filed a motion to dismiss and an amended motion to dismiss, as well as a supplement to the amended motion to dismiss. His attorney billed 13.8 hours for researching and drafting the 18-page original motion and another 8.8 hours for researching and drafting the 22-page amended motion, even though the amended motion added only four pages of substantive change.

This court noted in Rauhauser I that Appellee's choice to file an answer before service of citation, his knowledge of the upcoming nonsuit, and his intent to use a dismissal in another lawsuit against him by the same plaintiffs might be relevant facts on remand to the trial court's determination and award of court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action. 508 S.W.3d at 382 & n.3.

Charges for several hours of work were related to a dispute as to the trial court's order allowing withdrawal of Appellants' counsel. Appellee's attorney billed more than $1,000 in his quest to clarify that the order was not fairly characterized as "agreed." Taking judicial notice of the record filed in Rauhauser I , see Humphries v. Humphries , 349 S.W.3d 817, 820 n.1 (Tex. App.-Tyler 2011, pet. denied), we note that on March 27, 2014, the trial court signed an "Agreed Order Granting Motion For Withdrawal Of Counsel." The two-page order clearly contained the agreement of Appellants to their attorney's withdrawal because they signed the order. Thus, who had agreed to the order was apparent to the trial court by virtue of the signatures on the order. Nonetheless, on April 9, 2014, Appellee filed a seven-page objection to the withdrawal of Appellants' counsel, complaining that although the proposed order submitted by Appellants' counsel had been denominated "agreed," Appellee had not agreed to it. Appellee then sought sanctions against the attorney under civil practice and remedies code chapter 10 for this discrepancy.

Our jurisdiction covers the following counties: Archer, Clay, Cooke, Denton, Hood, Jack, Montague, Parker, Tarrant, Wichita, Wise, and Young. See Second Court of Appeals, http://www.txcourts.gov/2ndcoa (last visited Apr. 6, 2018) (listing the twelve counties within the court's jurisdiction). Cf. Fifth Court of Appeals, http://www.txcourts.gov/5thcoa (last visited Apr. 6, 2018) (listing the six counties within the Fifth Court's jurisdiction: Collin, Dallas, Grayson, Hunt, Kaufman, and Rockwall).

The list is extensive but, given our disposition here, we will leave it to the trial court to do its job by performing the necessary review of the remainder of the billing evidence to determine which charges are "moderate or fair" in this case.

Appellee argues that chapter 27 dispenses with the requirement that the fees charged were "necessary." Because this issue is not adequately briefed on appeal and a resolution of the question is not necessary to our holding, we decline to address Appellee's contention and limit our analysis to the issue of whether he proved that the attorney's fees awarded were reasonable. See Tex. R. App. P. 38.1(i), 47.1.

Appellants additionally argue that creating such an impossibility results in a due process violation as a "taking-a deprivation of [Appellant's] property without due process."

Appellants also argue that the trial court's order requiring them to transfer their various internet domain addresses to Appellee violated their due process and other constitutional rights and amounted to a quasi-criminal order along the lines of contempt without due process protections. Based on our disposition below, we do not reach these arguments. See Tex. R. App. P. 47.1.

We confine our review to the statutory scheme presented under the civil practice and remedies code because the question before us is whether nonmonetary sanctions were appropriate under a section of that code. Cf. Tex. R. Civ. P. 13 ("shall impose an appropriate sanction available under Rule 215"), 21b ("may ... impose an appropriate sanction available under Rule 215-2b"), 191.3(e) ("may ... impose ... an appropriate sanction as for a frivolous pleading or motion under Chapter 10 of the Civil Practice and Remedies Code"), 215.2(b) (providing for sanctioning of discovery abuses through prohibitions on the disobedient party, including the striking of pleadings); Tex. R. App. P. 52.11 (providing that the supreme court may "impose just sanctions"); Brookshire Bros., Ltd. v. Aldridge , 438 S.W.3d 9, 20 (Tex. 2014) ("[T]he trial court, rather than the jury, must determine whether a party spoliated evidence and, if so, impose the appropriate remedy."); In re Reece , 341 S.W.3d 360, 364-65 (Tex. 2011) (orig. proceeding) (defining contempt as "a broad and inherent power of a court" that can be used for civil-remedial and coercive-purposes or criminal-punitive-purposes).

The civil practice and remedies code also uses the word "recover" when the party receiving the remedy is the subject of the sentence or clause.

In chapter 140A, which addresses civil racketeering related to the trafficking of persons, the legislature did not use the word "impose" but merely stated that a court "may prevent, restrain, and remedy racketeering by issuing appropriate orders," which may include injunctions, receiverships, "or another order for a remedy or restraint the court considers proper." Tex. Civ. Prac. & Rem. Code Ann. § 140A.102(a). But as to the recovery of attorney's fees and costs, chapter 140A provides that a party may seek costs and reasonable attorney's fees and any award "may be assessed against and paid from money or property awarded under this chapter." Id. § 140A.102(f).

Appellee's attorney referenced these materials as "facts" in the February 4, 2016 hearing on Appellants' motion for new trial, but he did not offer anything into evidence at the hearing.

Appellants suggest that the phrase "willfulness and maliciousness" is a "term of art from bankruptcy law" that was snuck into the judgment by Appellee "as an attempt to prevent [Appellants] from discharging the judgment in the case through bankruptcy." Notwithstanding who prepared the proposed judgment, we point out that the judgment containing this term was signed by the trial judge. And we do not share Appellants' cynical view that a trial judge does not read every word of a proposed order prior to affixing his signature to it. Nor do we speculate about, nor ascribe an ulterior motive to, the court's erroneous decision to include this term in its final judgment.